UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOHNNY M.,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

Case No. C19-5787-MLP

ORDER

## I.    INTRODUCTION

Plaintiff seeks review of the denial of his application for Supplemental Security Income. Plaintiff contends the administrative law judge ("ALJ") erred in assessing medical opinions and in discounting his own allegations of fatigue and edema. (Dkt. # 12 at 1.) As discussed below, the Court AFFIRMS the Commissioner's final decision and DISMISSES the case with prejudice.

## II.    BACKGROUND

Plaintiff was born in 1969, has some college education, and has worked as a moving company driver. AR at 236. Plaintiff was last gainfully employed in April 2012. *Id*. at 235.

In December 2015, Plaintiff applied for benefits, alleging disability as of January 9, 2014. AR at 211-16. Plaintiff's application was denied initially and on reconsideration, and Plaintiff

ORDER - 1

requested a hearing. *Id*. at 141-44, 148-57. After the ALJ conducted a hearing in March 2018 (*id*. at 34-99), the ALJ issued a decision finding Plaintiff not disabled. *Id*. at 15-27.

Utilizing the five-step disability evaluation process,[1] the ALJ found:

Step one: Plaintiff has not engaged in substantial gainful activity since the application date.

Step two: Plaintiff has the following severe impairments: chronic heart failure, status-post aortic valve replacement with long-term use of anticoagulant medication; obesity; hypertension; chronic kidney disease; cervical spine disc herniation and degenerative disc disease, statu-post cervical discectomy and fusion; history of osteoarthritis of the knees; and major depressive disorder.

Step three: These impairments do not meet or equal the requirements of a listed impairment.[2]

Residual Functional Capacity: Plaintiff can lift/carry 20 pounds maximum, and can stand and walk slightly less than 2 out of 8 hours and sit for about 6 of 8 hours. He can occasionally climb ramps and stairs and never climb ladders, ropes, and scaffolds. He can occasionally balance and stoop, and never crawl. He can frequently reach overhead. He needs to avoid concentrated exposure to extreme temperatures, as well as fumes, dusts, gases, odors, poor ventilation, etc., and avoid moderate exposure to hazards, such as moving machinery and unprotected heights. He is further limited to simple instructions and tasks. He should not perform work with a GED math requirement greater than 1 (i.e., not do work where math is an essential part of the job).

Step four: Plaintiff cannot perform past relevant work.

Step five: As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, Plaintiff is not disabled.

AR at 15-27.

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. AR at 1-6. Plaintiff appealed the final decision of the Commissioner to this Court.

---

[1] 20 C.F.R. § 416.920.
[2] 20 C.F.R. Part 404, Subpart P, Appendix 1.

ORDER - 2

# III. LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

# IV. DISCUSSION

## A. The ALJ Did Not Harmfully Err in Assessing the Medical Opinion Evidence

Plaintiff challenges the ALJ's assessment of medical opinions describing his physical restrictions. Where not contradicted by another doctor, a treating or examining doctor's opinion may be rejected only for "clear and convincing" reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Where

contradicted, a treating or examining doctor's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id*. at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

The Court will address each challenged opinion in turn.

1. *Valory Delucia, M.D.*

Plaintiff's treating physician, Dr. Delucia, opined in October 2015 that Plaintiff had various physical limitations (specifically the inability to *inter alia* lift, carry, handle, push, pull, reach, and stoop) as a result of his cervical radiculopathy and congestive heart failure. AR at 440. Dr. Delucia opined that Plaintiff would be unable to perform even sedentary work as a result of his limitations. *Id.* at 441. In June 2017, Dr. Delucia provided another opinion, describing Plaintiff's physical limitations at that time, which included limitations as to lifting, carrying, stooping, crouching, or crawling. *Id*. at 1307.

The ALJ summarized Dr. Delucia's 2015 opinion, and discounted it because it was written just prior to Plaintiff's cervical spine surgery, which improved his neck pain and resolved his arm pain. AR at 24. The ALJ also discounted Dr. Delucia's 2017 opinion because the she did not rate the degree of limitation that Plaintiff would experience as to lifting, carrying, stooping, crouching, or crawling. *Id*.

Plaintiff argues that the ALJ erred in discounting Dr. Delucia's opinions as to his stooping, kneeling, and crouching abilities. (Dkt. # 12 at 5-6.) This argument fails to identify a harmful error in the ALJ's assessment of Dr. Delucia's opinions regarding Plaintiff's postural limitations because none of the jobs identified at step five requires *any* ability to stoop, kneel, or crouch. *See* AR at 26-27 (relying on Dictionary of Occupational Titles ("DOT") 379.367-010, 1991 WL 673244 (Jan. 1, 2016); DOT 726.684-110, 1991 WL 679616 (Jan. 1, 2016); DOT

237.367-014, 1991 WL 672186 (Jan. 1, 2016)). Accordingly, Plaintiff has failed to meet his burden to identify a harmful error in the ALJ's assessment of Dr. Delucia's opinions regarding Plaintiff's postural limitations.

2. Dr. Symonds

Dr. Symonds examined Plaintiff in June 2016 with no access to any medical records. AR at 803. Dr. Symonds noted that Plaintiff had "[a]ortic regurgitation status post aortic valve replacement in March 2016. Many of his symptoms are related to that and he is still in convalescence from his aortic valve placement." *Id*. at 804. Dr. Symonds noted that Plaintiff had 2+ pitting edema in his ankles during the examination, yet normal range of motion, full extremity strength and normal sensation. *Id*. at 807. Dr. Symonds opined that Plaintiff can never stoop, kneel, or crouch, and parenthetically indicated that he "should be in a recumbent position with his legs elevated for much of the day rather than sitting for long periods." *Id*. at 808.

The ALJ discounted Dr. Symonds' opinion as to Plaintiff's need to elevate his legs because this limitation was "likely intended while still recuperating, not as an ongoing restriction[,]" and furthermore, "lower extremity edema was not a recurrent complaint or sign." AR at 24. This is a reasonable interpretation of the record, because Dr. Symonds himself noted Plaintiff's recent surgery and opined that many of Plaintiff's symptoms were attributable to that surgery and his convalescence therefrom. Furthermore, as the ALJ found, lower extremity edema was not consistently observed or reported after Plaintiff fully recovered from surgery. *Id*.

Although Plaintiff argues (dkt. # 12 at 9) that the ALJ erred in finding that Dr. Symonds intended that Plaintiff would need to elevate his legs only during his convalescence, because Dr. Symonds did not explicitly indicate this, when Dr. Symonds' opinion is read as a whole the ALJ's interpretation is arguably reasonable. It may not be the only way to read Dr. Symonds'

ORDER - 5

opinion, but Plaintiff has not shown that it is an unreasonable way to read Dr. Symonds' opinion, particularly in light of the lack of evidence that Plaintiff's lower extremity edema continued to be an ongoing significant problem after he recovered from his surgery.

Although Plaintiff points to evidence that he contends shows that he did experience some degree of edema even after he recovered from surgery (dkt. # 12 at 14-15), he cites primarily evidence close in time to his surgery — some even before the time that Dr. Symonds described Plaintiff as "still in convalescence" from his surgery, in June 2016 — as well as other infrequent complaints of mild, transient edema and/or edema connected to other conditions. *See* AR at 765 (May 2016 treatment note describing "trace" edema), 767 (May 2016 treatment note finding that Plaintiff's "[v]ery mild [lower extremity] edema is stable"), 772 (May 2016 treatment note describing "trace" edema), 807 (Dr. Symonds' examination), 850 (June 2016 treatment note describing "trace" edema), 1002 (December 2016 note describing "trace to 1+ bilateral pedal edema"), 1490 (October 2017 note one week after bariatric surgery, where Plaintiff showed 1+ "total body edema"), 1638 (September 2017 note describing "pulmonary edema"), and 1929 (August 2017 note indicating Plaintiff experienced lower extremity a couple of days earlier and took medicine to resolve it). In the context of the entire record, these citations do not undermine the ALJ's finding that lower extremity edema was not a recurrent problem for Plaintiff after he fully recuperated from his March 2016 surgery, and this finding is a valid reason to discount Dr. Symonds' opinion regarding the need for Plaintiff to elevate his legs. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (not improper to reject an opinion presenting inconsistencies between the opinion and the medical record).

Plaintiff also argues that the ALJ erred in discounting Dr. Symonds' opinion regarding his inability to stoop, kneel, and crouch, but even assuming this was an error, the error is

harmless because none of the jobs the ALJ relied on at step five require any stooping, kneeling, or crouching, as dicussed *supra*. Accordingly, Plaintiff has failed to meet his burden to establish harmful error in the ALJ's assessment of Dr. Symonds' opinion.

### B. The ALJ Did Not Err in Assessing Plaintiff's Allegations Regarding Fatigue and Edema

The ALJ discounted Plaintiff's subjective allegations of disabling limitations as of January 2014 for a number of reasons, namely (1) Plaintiff did not consistently seek treatment until August 2015, (2) Plaintiff's symptoms improved with treatment, and (3) Plaintiff's treatment record does not consistently document symptoms that Plaintiff alleged in applying for benefits. AR at 21-23. Plaintiff contends that with regard to his allegations of fatigue and edema, the ALJ's reasons for discounting were not clear and convincing, as required in the Ninth Circuit. *See Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014).

#### 1. Minimal Treatment Before August 2015

Plaintiff contends that the ALJ erred in finding that his lack of treatment before August 2015 reflected a lack of severity in his symptoms, because "the record contins some evidence that Plaintiff's treatment prior to October 2015 was limited by a lack of funds." (Dkt. # 12 at 12-13 (citing AR at 77, 404).) Plaintiff also notes that once he did see providers, his conditions were treated quickly, which further suggests that his impairments were not insignificant. (*Id.* at 13.)

The ALJ noted the possibility that Plaintiff's lack of treatment was caused by financial constraints, but found that the record did not support this interpretation. AR at 21. The ALJ explained that Plaintiff did present for one routine appointment in December 2014, where his hypertension, congestive heart failure, and chronic kidney disease were described as stable, controlled, and/or mild. *Id.* (citing *id*. at 384). The ALJ also described one emergent care visit in June 2015, where Plaintiff complained of short-term low back pain radiating to his right leg,

which improved with treatment. *Id*. at 21 (citing *id*. at 452-53). The evidence of this infrequent treatment supports the ALJ's interepretation of the record, because it demonstrates that Plaintiff was able to obtain care when he needed it, and that his complaints were either not longstanding or were not particularly limiting prior to his consistent treatment beginning in August 2015. *Id*. at 21.

Plaintiff's citation to evidence from October 2015 where his wife complained of limited resources (AR at 404) or her testimony at the hearing in March 2018 that Plaintiff had previously lacked insurance coverage (*id*. at 77) does not undermine the ALJ's interpretation, particularly because his wife's complaint in October 2015 mentioned that Plaintiff did in fact have medical coverage at that time. Furthermore, the fact that Plaintiff underwent surgeries shortly after resuming treatment (dkt. # 12 at 13) does not necessarily suggest that his conditions caused significant limitation during the time that he was not seeking treatment. Accordingly, Plaintiff has not established error in the ALJ's first reason.

        2.     *Improvement with Treatment*

The ALJ found that Plaintiff's shortness of breath, lower extremity edema, and hypertension improved after his aortic valve replacement in March 2016. AR at 22. Plaintiff notes that in April 2016 he had a fluid buildup around his heart and required drainng (dkt. # 12 at 13 (citing AR at 676)), which he contends undermines the ALJ's finding that his recovery from his aortic valve replacement was "uneventful." But the ALJ quoted a treatment note in finding Plaintiff's recovery to be "uneventful." AR at 22 (quoting *id*. at 723). Furthermore, the ALJ did note Plaintiff's "brief treatment for transient peri[carditis]," namely the fluid buildup around Plaintiff's heart. *Id*. at 22 (citing *id*. at 754, 760-61, 767). As found by the ALJ, the treatment notes indicate that Plaintiff improved upon the draining of that fluid. *Id*. Thus, Plaintiff does not

show that the ALJ overlooked any evidence or that his finding of improvement with treatment is not supported by substantial evidence.

Plaintiff goes on to argue that the ALJ erred in finding that his cardiac functioning improved with treatment, because the aortic regurgitation and left ventricular systolic function ejection fraction that the ALJ cited were not the only measures of Plaintiff's cardiac functioning. (Dkt. # 12 at 13-14.) According to Plaintiff, the ALJ failed to consider all of Plaintiff's conditions in combination. (*Id.*) This argument does not point to any specific error in the ALJ's interpretation of the record, however: Plaintiff has failed to identify a limitation or condition that the ALJ overlooked, and therefore does not support the Plaintiff's assignment of error to this line of the ALJ's reasoning.

### 3. *Edema*

Plaintiff argues that the ALJ erred in finding that the record failed to corroborate his complaints of edema as a longstanding problem even after his aortic valve replacement. (Dkt. # 12 at 14-15.) As explained *supra*, however, the Court finds that the ALJ's interpretation of the record with regard to edema is supported by substantial evidence.

For all of these reasons, the Court finds that Plaintiff has failed to establish error in the ALJ's assessment of his subjective allegations.

//

//

//

//

//

## V. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

Dated this 26th day of March, 2020.

*/s/ M.J. Peterson*
MICHELLE L. PETERSON
United States Magistrate Judge